

**FILED**

JUL - 8 2008

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| DARREN YOUNGMAN, | ) | |
| | ) | |
| Petitioner, | ) | CR 04-30110 |
| | ) | |
| vs. | ) | GOVERNMENT'S RESPONSE |
| | ) | & BRIEF IN OPPOSITION TO |
| UNITED STATES OF AMERICA | ) | 28 U.S.C. § 2255 PETITION |
| | ) | |
| Respondent. | ) | |

The United States of America, by and through Assistant United States Attorney Jeremy R. Jehangiri, respectfully submits this answer and brief in opposition to Petitioner Darren Youngman's 28 U.S.C. § 2255 petition.

## I. PROCEDURAL HISTORY

Darren Youngman was indicted in United States District Court on eighteen counts. The Government dismissed six of the counts at trial and the jury acquitted on three counts. The jury found Petitioner guilty of nine counts and the District Court granted judgments of acquittal on two counts. Petitioner was convicted of seven counts, including two counts of aggravated sexual abuse, in violation of 18 U.S.C. §§ 1153, 2241(a), 2246(2), and five counts of assault with a dangerous weapon, in violation of 18 U.S.C. §§ 113(a)(3) and 1153. All of the charged offenses occurred on the Rosebud Sioux Indian Reservation. Petitioner appealed all seven counts of conviction.

On appeal, Petitioner argued the district court erred by: (1) denying his motion for writs

of habeas corpus ad testificandum, (2) commenting about a government witness, (3) declining a proposed jury instruction, and (4) denying a judgment of acquittal based on insufficient evidence on five counts.  The Eight Circuit Court of Appeals reviewed Petitioner's conviction and affirmed on all seven counts.  *United States v. Youngman*, 481 F.3d 1015 (8th Cir. 2007).

On April 1, 2008 Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.  The District Court ordered that the Government shall serve and file an answer or responsive pleading and an accompanying brief to the § 2255 motion.

In his § 2255 Motion, Petitioner first argues his claims are not subject to procedural default.  Second, Petitioner contends he suffered from ineffective assistance of trial and appellate counsel.  He next asserts his sentence is unreasonable and above the statutory maximum.  Petitioner also argues that the District Court lacked jurisdiction over him, that the district court's errors were prejudicial, and that the prosecution engaged in prosecutorial misconduct.  Finally, Petitioner requests an evidentiary hearing.

The Government opposes the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence and contends that Petitioner's request for a hearing be denied.  A motion under § 2255 "can be dismissed without a hearing if (1) the Petitioner's allegations, accepted as true, would not entitle the Petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003) (citation omitted).  Moreover, it has long been the rule in the Eight Circuit that an allegation of ineffective assistance of trial counsel may be summarily denied when the allegations are merely conclusory.  *Richardson v. United States*, 577 F.2d 447 (8th Cir. 1978).  Pursuant to the following legal precepts, Petitioner's motion

2

and request must be summarily denied.

## II. PETITIONER'S CLAIMS ARE PROCEDURALLY DEFAULTED

Under 28 U.S.C. § 2255, a federal prisoner can collaterally attack a conviction, or sentence, on the grounds of jurisdictional, constitutional, or fundamental defects that result in a complete miscarriage of justice. The law in regard to procedural default is well established in the Eighth Circuit. A Petitioner who fails to raise nonconstitutional or nonjurisdictional issues on direct appeal is barred from raising those issues for the first time in a § 2255 habeas proceeding. *Reid v. United States,* 976 f.2d 446, 447 (8th Cir. 1992) (citing *United States v. Frady,* 456 U.S. 152, 165 (1982)). *See Anderson v. United States,* 25 F.3d 704 (8th Cir. 1994). A procedural default is excused only if the Petitioner can show cause and actual prejudice. *Frady,* 456 U.S. at 167-168. *See United States v. Smith,* 843 F.2d 1148, 1149 (8th Cir. 1988). A § 2255 Motion is not a substitute for a direct appeal and is not the proper avenue for complaints about simple errors. *Anderson,* 25 F.3d at 706 (citing *Reid,* 976 F.2d at 447). *See Poor Thunder v. United States,* 810 F.2d 817, 821 (8th Cir. 1987). Furthermore, claims decided on direct appeal cannot be raised and relitigated in a § 2255 Motion. *United States v. Shabazz,* 657 F.2d 189, 190 (8th Cir. 1981).

Petitioner's claims are as follows: (1) ineffective assistance of counsel, (2) his sentence is unreasonable and above the statutory maximum, (3) the District court lacked jurisdiction over him, (4) the Court's trial errors were prejudicial, and that the prosecution engaged in prosecutorial misconduct, and (5) that he is entitled to an evidentiary hearing. With the exception of the Petitioner's jurisdictional claim and his Sixth Amendment ineffective assistance of counsel claim, these issues are procedurally defaulted. However, because none of Petitioner's

claims of ineffective assistance of counsel satisfy the *Strickland* test, see infra III. a. l., the underlying claims are defaulted. Also, the claims involving Mr. Arendt's request to subpoena three federal prisoners four days before trial, the District Court's errors for comments about witnesses, and the District Court's declination of a proposed jury instruction were settled on direct appeal. As such, the claims settled on direct appeal cannot be relitigated. *Shabazz*, 657 F.2d at 190. For these reasons, all of Petitioner's claims, except the jurisdictional claim and the ineffective assistance of counsel claim, are defaulted.

## III. PETITIONER RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL

Petitioner contends his trial counsel and appellate counsel were ineffective in violation of his Sixth Amendment right to counsel. The Supreme Court established the test for ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1994). The Court established the following test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id* at 687. The Court further stated that "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id* at 690.

In order to receive relief on an ineffective assistance of counsel claim, Petitioner must

satisfy both prongs of the *Strickland* test and overcome the strong presumption counsel was effective. Furthermore, if Petitioner cannot prove prejudice, the court "need not address whether counsel's performance was deficient." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). To show prejudice, Petitioner must demonstrate "a resonable probability that he would have been acquitted absent the allegedly unprofessional error," *Ervin v. Delo*, 194 F.3d 908, 913 (8th Cir. 2000). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The Petitioner raises numerous claims of ineffective assistance of trial and appellate counsel. Although many of the claims are subject to procedural default, the Government will address these claims in the sub issues below.

### A. Failure to Call Exculpatory Witnesses

As stated above, this claim was raised on direct appeal and settled in favor of the Government. The Eighth Circuit found the District Court did not err in denying the writs of habeas corpus ad testificandum when four days before trial Petitioner requested the production of three federal prisoners as witnesses. The Eighth Circuit reasoned it was unlikely the witnesses could be found and that Petitioner did not inform the Court of the exact location of the witnesses. *Youngman*, 481 F.3d at 1017. Accordingly, the Eighth Circuit stated, "[a] defendant bears the burden of demonstrating that the testimony of the witness is both material and favorable to the defense. Mere allegations of materiality and necessity are not sufficient to establish that a witness is necessary to an adequate defense." *Id.*

More over, the Eighth Circuit evaluated an ineffective assistance of counsel claim for failure to call an exculpatory witness and failure to investigate in *Owens v. Dormire*, 198 F.3d

679 (8th Cir. 1999). In *Owens* the defendant was convicted of second degree murder along with numerous other counts that stemmed from a robbery he committed. On habeas review, Owens argued ineffective assistance of counsel for failure to call a potentially exculpatory witness. Owens told counsel the witness's name and where to locate the witness. The Court ruled that Owens failed to show by clear and convincing evidence that he informed trial counsel of the existence and availability of a potential witness. The Court found, under *Strickland*, that counsel's performance may have been deficient, but Owens was not prejudiced by the deficient performance. Owens' conviction was affirmed.

Petitioner argues his defense counsel Mr. Arendt did not call exculpatory witnesses. A careful review of the record reveals Mr. Arendt went to great lengths to locate exculpatory witnesses to prove Petitioner's innocence. Mr. Arendt had great difficulty locating witnesses to testify for Petitioner. At one point Mr. Arendt "spent three days calling federal prisons, driving around Rosebud and Mission talking to people, and interviewing countless individuals." (Doc. 148-7 at 9). Mr. Arendt also tried to find a Whitney Jones, who Petitioner said could testify he had a broken foot and could not have kicked one of the victims. Petitioner told Mr. Arendt that Jones was in Sioux Falls. Mr. Arendt tracked Jones to his last known address in Rapid City, South Dakota, but he was unable to serve him in Rapid City, Sioux Falls, or on the Rosebud Reservation. (Doc. 148-7 at 9).

Many of the witnesses Petitioner claimed would prove his innocence were uncooperative, and their stories did not match Petitioner's. Mr. Arendt subpoenaed Michelle Bordeaux to testify for Petitioner, but Bordeaux did not appear. Bordeaux's testimony was intended to be used to impeach Kathleen King, but Bordeaux ignored the subpoena. Mr. Arendt stated, "I personally

6

looked that young lady in the eye and she was served and told when she should be here." (TT 626).

The Eighth Circuit dealt with a similar situation in *Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). In *Williams*, a subpoenaed alibi witness voluntarily absented herself in mid-trial. Williams filed a § 2255 Motion and alleged ineffective assistance of counsel for failure to produce the alibi witness. Counsel subpoenaed the witness and tried to find the witness when she did not appear to testify. The Eighth Circuit held counsel was effective and failure of the witness to appear was not prejudicial. *Id.*

In this case, Mr. Arendt did all he could to get Michelle Bordeaux to trial, based on Eighth Circuit case law Mr. Arendt's performance was effective. After trial, Petitioner also claimed Larry Roland made statements that a witness named Brenna LaPointe received a deal for her testimony. On November 30, 2006, Mr. Arendt sent a letter to the South Dakota State Pennitentiary, and through this letter, he located a Lawrence Roland, who was the individual Petitioner referred to as Larry Roland. (Doc. 148-12 at 3). Mr. Arendt asked Petitioner what Roland told him, but Petitioner did not respond to Mr. Arendt's request. (Doc. 148-12 at 13).

The Court found in *Youngman* that Petitioner was not prejudiced when the district court denied him the right to call three federal prisoners as witnesses four days before trial. *Youngman*, 481 F.3d at1017. Furthermore, Mr. Arendt made every reasonable effort to find exculpatory witnesses to demonstrate Petitioner's innocence. Under *Strickland,* Mr. Arendt's performance was not deficient. Because he offers no evidence based in fact, Petitioner's claims of ineffective assistance of counsel are merely conclusory and inconsistent with the record. For these reasons, Petitioner's ineffective assistance of counsel claim for failure to call exculpatory

witnesses does not pass muster under *Strickland.*

## B. Failure to Properly Cross-Examine and Impeach Government Witnesses

"Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mr. Arendt effectively cross examined Kathleen King on the color of the shoes with which Petitioner kicked her. (Doc. 148-7 at 9). Petitioner acknowledged to Mr. Arendt that he could not believe he was convicted "in light of the impeachment we did to the Government's witnesses, particularly someone such as Kathleen King." (Doc. 148-11 at 3). Petitioner was impressed with the way Mr. Arendt cross examined the witnesses and impeached them. Mr. Arendt also pointed out the Government witnesses inconsistent testimony in his closing arguments to the jury. (TT 683). (Doc. 148-11 at 3).

Based on the facts stated in the record, Mr. Arendt did an excellent job in the eyes of Petitioner. Mr. Arendt did such a good job Petitioner was convicted on seven of the eighteen counts against him, with three counts being acquitted by the jury. *Youngman*, 481 F.3d at 1017. The District Court acknowledged and thanked Mr. Arendt for his efforts in what Judge Conmy described as "a very difficult case" (ST 46). Petitioner expressed concern with some impeachment issues Mr. Arendt did not use; however, Mr. Arendt is allowed wide latitude to make professional judgements under *Strickland*, and Mr. Arendt did not believe the impeachment issues with which Petitioner was concerned were valid. (Doc. 148-9 at 6). For these reasons, Petitoner's claims of ineffective assistance of counsel for failure to impeach and to properly cross-examine Government witnesses are based on conclusory statements that are inconsistent with the record and must be dismissed.

8

## C. Failure of Counsel to Investigate, Prepare for Trial and Produce Defense Evidence, and Failure to Present an Adequate Defense

Petitioner claims Mr. Arendt failed to investigate and that Mr. Arendt's performance was therefore deficient and prejudicial. These allegations are not supported by the record, and Petitioner offers no facts to support his claims. Petitioner's claims of ineffective assistance of counsel based on failure to investigate, prepare for trial and produce defense evidence, and failure to present an adequate defense are subject to dismissal as being conclusory and lacking sufficiency necessary to state a claim for relief. The Eighth Circuit held "vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255." *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986). Conclusory allegations, unsupported by any specifics are subject to dismissal. *Smith v. United States*, 677 F.2d 39, 41 (8th Cir. 1982).

Here, Mr. Arendt spent three days traveling in Rosebud and Mission talking to people and interviewing witnesses in an effort to defend Petitioner at trial. Mr. Arendt also hired ex-FBI Agent Charlie Draper to help with the investigation. (Aff. at 2). The witnesses Mr. Arendt did find contradicted Petitioner's story and would not help his case (Doc. 148-7 at 9). Furthermore, Petitioner did not cooperate with Mr. Arendt when Mr. Arendt tried to locate witnesses and prepare Petitioner's appelate brief. (Doc. 148-7 at 11).

Petitioner argues that Whitney Jones could testify that he had a broken foot and could not have kicked one of his victims. However, Petitioner provided little help in finding Whitney Jones, and in spite of Mr. Arendt's best efforts, he could not find Whitney Jones. (Doc. 148-7 at 9). Petitioner argues there are witnesses who can contradict the government witnesses' statements. Despite these conclusory assertions, Petitioner does not give locations or names for

9

these witnesses in his brief. Even without names and locations, Mr. Arendt continued to investigate and talk to potential witnesses. (Doc. 148-7 at 9).

Petitioner's allegations that Mr. Arendt failed to investigate are vague and conclusory. The record does not support Petitioner's contentions that Mr. Arendt failed to investigate. To the contrary, Mr. Arendt's investigation revealed there were few, if any, witnesses that agreed with Petitioner's version of what happened. (Doc. 148-7 at 10).

The District Court acknowledged Mr. Arendt had a difficult case to present. (ST 46). The Petitioner was angry he was convicted. However, it was neither due to lack of preparation, nor failure to present defense evidence, nor make an adequate defense. Mr. Arendt's defense was so well prepared and presented that Petitioner was only convicted on seven out of the eighteen counts contained in the indictment. Mr. Arendt effectively impeached government witnesses and pointed out discrepancies in the testimony of Brenna LaPointe and Kathleen King. (Doc. 148-9 at 5). Accordingly, Mr. Arendt's performance was not deficient and he adequately investigated, prepared, and presented Petitioner's case to the jury.

## D. Failure to Challenge Prosecution Evidence

Again, Petitioner makes bald assertions without any factual support. He claims Kathleen King lied about her encounters with Petitioner and the defense failed to challenge her testimony. Conclusory claims not based in fact are subject to dismissal. *Sanders*, F.3d at 722. Mr. Arendt challenged the Government's evidence throughout the trial. Mr. Arendt effectively cross-examined Kathleen King about the color of the tennis shoes Petitioner used to kick her, in comparison with the tennis shoes police seized from Petitioner. (Doc. 148-7 at 9). The Eighth Circuit recognized counsel demonstrates effectiveness by having counts acquitted. *U.S. v.*

*Resnick*, 745 F.2d 1179, 1188 (8th Cir. 1984).  Mr. Arendt demonstrated his effectiveness when he got eleven of the eighteen indicted counts dismissed or acquitted. This kind of success is only accomplished by challenging the prosecution's evidence.  Therefore, Petitioner's claim that Mr. Arendt failed to challenge the prosecution's evidence is frivolous.

### E.  Failure to Argue Actual Innocence

The Supreme Court stated in *Strickland* that "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id* at 690.  Mr. Arendt has a duty of candor and did not have a duty to argue actual innocence if the facts did not support such an argument. *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 441(1988) (requiring candor toward the tribunal).

More importantly, the Petitioner stated in his sentencing hearing, "I'm not saying I'm innocent of everything." (ST 36).  The Petitioner continued talking about the people he hurt, he stated, "So, yeah, I sent a letter to them, and I apologized to all of them." (ST 37).  The District Court put the Petitoner's apology in perspective.  The Court stated, "I have a few comments I want to make.  And the first is that apologizing for whipping someone with a belt doesn't cure the offense conduct.  Apologizing for kicking someone or for hitting them with your fist does not clear the record and exonerate one's conduct." (ST 39).

Mr. Arendt argued in his closing statement, "we believe that a verdict of acquittal on all counts, except 17 are appropriate in this matter." (TT 694).  Mr. Arendt asked for acquittal on several occasions throughout the trial. (Doc. 148-9 at 5).  To make a claim of actual innocence

11

would be frivolous under the facts of this case. This claim is vague, conclusory and unsupported by facts and must be dismissed.

### F. Conflict of Interest

Petitioner mistakenly claims that Mr. Arendt was involved in a case against a relative of Petitioner's named Sherry Whiting. Mr. Arendt specifically informed Petitioner in a letter, "The only reason I did not take the Sherry Whiting case was because I am actively representing you, and it could be perceived as a conflict of interest." (Doc. 148-7 at 10). Petitioner also claims Mr. Arendt and the prosecutor Randy Seiler, are good friends, which is unsupported by any facts. *Smith*, 677 F.2d at 41. Any relationship Mr. Arendt and Mr. Seiler have is not social, but rather a purely professional relationship. (Aff. at 3). Petitioner's conflict of interest claim is accordingly meritless.

### G. Failure to Object to Prosecutorial Misconduct

Petitioner offers no facts to support his claim of prosecutorial misconduct. *Id.* The only evidence that supports his claim is a letter from Trish Bordeaux. The letter is not signed, thereby, placing its authority in question. (Doc. 148-10 at 2-5). Authentic or not the statements made in this letter are conclusory and unsupported by the record. *Smith*, 677 F.2d at 41. Ms. Bordeaux refused to testify and the five counts based on her testimony were dismissed by the Government.

Petitioner also claimed Jana Minor, his previous attorney, had information about prosecutorial misconduct in his case. However, when Mr. Arendt contacted Jana Minor about Petitioner's claims of prosecutorial misconduct, she refused to give a statement. (Doc.148-6 at

6).  As such, Petitioner was not prejudiced by Mr. Arendt not objecting to any alleged

misconduct.  This claim too, must be dismissed.

## H.  Sentencing

Petitioner contends counsel failed to object to unconstitutional sentence enhancements.

Petitioner contends his sentence was above the statutory maximum and that counsel did not

discuss the Presentence Investigation with him.  Petitioner also argues counsel did not object to

errors in the Presentence Report, and that counsel failed to object to non-consideration of factors

described under 18 U.S.C. § 3553(a).

Petitioner's claims are without merit.  Mr. Arendt described how he and Petitioner

addressed all of these issues in a letter dated April 5, 2006, in which Mr. Arendt stated:

> Dear Tote,
>
> This letter is a follow up to my conversation with you on the phone on
> Wednesday, April 5, 2006.  At that time, **you and I reviewed the Presentence
> Report in your case.  I indicated that I was generally happy with the results
> of the same, and was not going to file objections unless you wanted me to.
> Please understand that this is different than the motion that I filed for a
> Judgment of Acquittal two months ago after your trial.  Further understand
> that we are still going to appeal your convictions on the grounds that I have
> previously set forth.**  However, I do not have any objections to the manner in
> which Trevor Wiebe calculated the time you have to do.  Specifically, he gave you
> a total offense of 33 on one rape count and 31 on the other.  When he added all the
> lesser assaults, you got an increase of two levels, which is a 35.  You had 4
> criminal history points, which resulted in having a criminal history of 4.  As a
> result, the guideline range was 235 months (19 years) to 293 months (24 years).
> As I told you, you have to do about 85% of your time in the federal system.  That
> means if you get the 19 years you'll be out in 16.  You'll get credit for the 2 years
> you have already done, which means you'll have about 14 years left.

(Doc. 148-9 at 5, emphasis added).  Furthermore, the government wanted an upward departure

13

for sentencing, but the probation officer did not give the upward enhancement. (Doc. 148-11 at 4). Mr. Arendt took Petitioner through all of the necessary steps in relation to the Presentence Report and the sentencing procedure. Thus, Petitioner did not suffer from ineffective assistance of counsel in relation to his sentencing.

### I. Failure of Counsel to Communicate With Petitioner.

There are approximately eighteen letters of communication between Petitioner and Mr. Arendt in the record. (Doc. 148-4, Doc. 148-6, Doc. 148-7, Doc. 148-8, Doc. 148-9, Doc. 148-11 and Doc. 148-12). Mr. Arendt responded in writing to Petitioner's claim that Mr. Arendt failed to communicate with him. Mr. Arendt stated, "It's not accurate to contend that none of your questions were ever answered. To the contrary, I have written numerous letters to you. Your response was no response." (Doc. 148-6 at 5). Mr. Arendt even took time away from his family on a weekend to drive down to Winner, South Dakota, to visit Petitioner. (Doc. 148-7 at 5). Mr. Arendt also allowed Petitioner's daughter, Savannah, to use Mr. Arendt's phone to contact Petitioner. (Doc. 148-7 at 8).

Petitioner's claim that counsel failed to communicate with him is unsupported by the record. *Smith*, 677 F.2d at 41. As stated above, Mr. Arendt kept in contact with Petitioner through every step of the trial, sentencing, and appeals process. Petitioner's complaint is therefore without merit, and it must be dismissed.

### J. Polling the Jury

In order to show ineffective assistance of counsel for failure to poll the jury, Petitioner must prove he was prejudiced by counsel's failure to poll the jury. *See U.S. v. Jones*, 403 F.3d

14

604, 605 (8th Cir. 2005) (holding a habeas petitioner alleging ineffective assistance of counsel must prove deficient performance and that but for the deficient performance the proceeding would have a different result). *See generally U.S. v. Leanos-Marquez*, 206 Fed.Appx. 647, 650 (8th Cir. 2006) (petitioner must show prejudice for failure to poll the jury in order to argue ineffective assistance of counsel). Petitioner's claim that Mr. Arendt's failed to poll the jury is contradicted by the Verdict Transcript. After the verdict was read the Court inquired whether counsel would like to poll the jury. Mr. Arendt replied "I do your honor." (VT 7). The clerk polled all twelve jurors and the polling reflected a unanimous verdict. (VT 7-8). The argument that counsel failed to poll the jury has no basis in fact and is contradicted by the record. *Smith*, 677 F.2d at 41. Petitioner's claim of ineffective assistance of counsel for failure to poll the jury must be dismissed.

## K. Failing to Object to Specific Jury Instructions

Claims decided on direct appeal cannot be raised and relitigated in a § 2255 Motion. *Shabazz*, 657 F.2d at 190. There is no jury instruction mentioned in Petitioner's brief. Therefore, it can only be assumed that he is referencing the proposed jury instruction issue raised on direct appeal.

Petitioner argued that the Eighth Circuit erred by allowing the jury instruction that included "on or about between January 1, 2001, and May 31, 2003," *Youngman*, 481 F.3d at 1019. The Court found that time was not a material element of the offense and the jury was adequately advised of the instructions essential elements. *Id.* Hence, this issue was decided on direct appeal and cannot be relitigated. *Shabazz*, 657 F.2d at 190.

15

### L. Ineffective Appellate Counsel

Petitioner argues appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness in relation to the calling of three witnesses four days before trial. Under 28 U.S.C. § 2255, a federal prisoner can collaterally attack a conviction or sentence on the grounds of jurisdictional, constitutional, or fundamental defects that result in a complete miscarriage of justice. Claims decided on direct appeal cannot be raised and cannot be raised and relitigated pursuant to a § 2255 Motion. *Id.* Petitioner's claim of error was addressed on direct appeal and he cannot relitigate this claim in a motion brought pursuant to 28 U.S.C. § 2255. *See Youngman,* 481 F.3d 1015 (8th Cir. 2006).

Even if Petitioner could relitigate the issue, the court found that he had not met his burden of demonstrating that the testimony of these three witnesses was material and favorable to the defense. *Youngman,* 481 F.3d at 1017. Further, under this holding, Petitioner cannot show prejudice. Petitioner's ineffective assistance of appellate counsel claim also fails.

## IV. REASONABLENESS OF SENTENCE

Petitioner was convicted of two counts of aggravated sexual abuse, in violation of 18 U.S.C. § 1153, 2241 (a), 2246(2), and five counts of assault with a dangerous weapon, in violation of 18 U.S.C. § 113(a)(3), 1153. A person convicted under 18 U.S.C. § 2241(a) "shall be fined under this title, imprisoned for any term of years or life, or both." 18 U.S.C. § 2241(a). A person convicted of assault with a dangerous weapon under 18 U.S.C. § 113(a)(3) can be punished with a fine or imprisonment for not more than ten years, or both. 18 U.S.C. § 113(a)(3).

16

Petitioner received a sentence of 280 months' imprisonment for aggravated sexual abuse. The Petitioner's claim that he received an unreasonable sentence above the statutory maximum is a misstatement of law, given the fact the Petitioner could have received a maximum sentence of life imprisonment. The District Court found that Petitioner had a Criminal History Category of IV. The adjusted, final guideline range after the grouping of related offenses was a level 35, providing for a 235-293 month guideline sentencing range. (ST 40). The District Court gave Petitioner credit for time served and sentenced him to 280 months on the aggravated sexual abuse convictions. The District Court then sentenced Petitioner to 120 months' on Counts IV, V, VIII, XV, and XVII. (ST 41). All of the sentences Petitioner received run concurrently.

Petitioner was acquitted on Counts I, II and IX. Counts VI and XVIII were dismissed by the Court. For the imposition of sentences, the Eighth Circuit established a three-step sentencing process to help District Courts avoid unreasonable sentences, which is as follows,

> First, the district court must calculate the appropriate advisory Guidelines range based on the applicable offense level and the criminal history category. Then, the district court should consider whether any traditional Guidelines-based departures apply. And only after completing steps one and two should the district court then consider the other § 3553(a) factors to decide whether to impose a Guidelines or non-Guidelines sentence.

*United States v. Solis-Bermudez*, 501 F.3d 882, 884 (8th Cir. 2007). The District Court calculated the Petitioner's sentence based on the appropriate Guidelines range and the Petitioner's criminal history. The Court found no traditional Guidelines-based departures and stated the Petitioner's sentence was presumptively reasonable under the circumstances of his case. (ST 41). Even applying 18 U.S.C. § 3553(a), Petitioner's sentence is reasonable.

Section 3553(a) provides as follows:

17

**(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed--
>
> > **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > **(B)** to afford adequate deterrence to criminal conduct;
> >
> > **(C)** to protect the public from further crimes of the defendant; and
> >
> > **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

*Id.* The District Court evaluated the seriousness of the offense and Petitioner's history and characteristic's when it imposed his sentence. (ST 41). The Court looked to the Petitioner's methamphetamine abuse and his pattern of victimizing females. (ST 39-41). The Court found no basis under § 3553(a) to vary from the Guidelines range established above. Because Petitioner's sentence falls within the statutory maximum, and because the District Court utilized § 3553(a) when it imposed sentence, Petitioner's sentence is reasonable.

## V. PERJURED TESTIMONY

Petitioner contends perjured testimony offered by Kathleen King and others led to his conviction. In order for a judgment to be vacated on grounds of perjured testimony, two

18

elements must be established. "First the use of perjured testimony, and second, knowledge by the prosecuting officials at the time the testimony was used that is perjured." *Holt v. United States*, 303 F.3d 791 (8th Cir. 1962). Petitioner offers no evidence to support his contention that Kathleen King, or any other witness, committed perjury.

Kathleen King testified that the tennis shoes with which Petitioner kicked her were white. (TT 146). Mr. Arendt cross-examined King and pointed out the shoes the Government seized from Petitioner were black. (TT 214). King said they were different shoes. (TT 214). This is not perjured testimony. Rather it is effective cross-examination. The witnesses in this case testified against Petitioner. Testimony that is adverse to the Petitioner does not make it perjured testimony. In his brief, Petitioner makes vague and indistinct references to perjured testimony, which are not grounds for relief. Moreover, it is within the province of the jury to resolve conflicting testimony and make credibility determinations. *United States v. Coleman*, 525 F.3d 665, 666 (8th Cir. 2008). Through Mr. Arendt's cross-examination, the jury made the decision of whether to credit Ms. King's testimony. The jury was able to do so because it found petitioner guilty on some counts and acquitted on others. *Id.* Accordingly, this claim must be dismissed.

## VI. JURISDICTION

Petitioner argues that although he is Native American, he was not properly transferred from tribal custody into federal custody. He contends that there is no record of his transfer. Again, Petitioner is mistaken in these conclusory allegations.

Petitioner was indicted on November 17, 2004. (Doc. 1). On November 22, 2004 the United States of America, by and through Randolph J. Seiler, filed an Application for Writ of

Habeas Corpus ad Prosequendum requesting that Petitioner be placed in the custody of the United States Marshal Service. (Doc. 4). On November 23, 2004 an arrest warrant was issued for Petitioner. Then, on November 24, 2004, United States District Judge Charles B. Kornmann issued a Writ of Habeas Corpus ad Prosequendum as to Darren Youngman. (Doc. 5). Judge Kornmann ordered that Petitioner be taken into the custody of the United States Marshal's Service "forthwith," in order for Petitioner to make an initial appearance in the federal case pending against him. (Doc. 5). The District Court's writ also ordered that Petitioner remain in the custody of the United States Marshal's Service for all other proceedings concerning this matter.

Petitioner was transferred into federal custody through the Writ of Habeas Corpus ad Prosequendum issued by Judge Kornmann. The documentation of this transfer is found in the case docket. Petitioner was properly transferred to the United States from the tribe, effectively vesting the District Court with jurisdiction over him. Accordingly, Petitioner's jurisdictional claim is without merit and fails.

## VII. WHETHER THE COURT'S ERRORS AT TRIAL WERE PREJUDICIAL

A § 2255 Motion is not a substitute for a direct appeal and is not the proper avenue for complaints about simple errors. *Anderson*, 25 F.3d at 706 (citing *Reid*, 976 F.2d at 447). *See Poor Thunder*, 810 F.2d at 821. Furthermore, the errors made by the trial court were addressed on direct appeal and were not prejudicial. *Youngman*, 481 F.3d at 1018-1019. Claims raised and decided on direct appeal cannot be relitigated on a § 2255 Motion. *Shabazz*, 657 F.2d at 190. As such, Petitioner's claims of error are defaulted and must be dismissed.

20

## VIII. EVIDENTIARY HEARING

Petitioner argues that his petition shows he entitled to relief. The United States Supreme Court addressed a petitioner's right to an evidentiary hearing in the case of *Schriro v. Landrigan*, 127 S.Ct. 1933 (2007). In *Landrigan*, the petitioner was convicted of murder and filed a habeas petition under 28 U.S.C. § 2254. The District Court refused to grant him an evidentiary hearing because he could not make out a colorable claim of ineffective assistance of counsel. The Ninth Circuit found counsel was ineffective and reversed the District Court. The United States Supreme Court found counsel was effective and affirmed the ruling of the District Court to deny an evidentiary hearing. *Id.*

The Supreme Court acknowledged that the District Court has the authority to deny an evidentiary hearing. The Court stated, "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Landrigan*, 127 S.Ct. At 1940. A prisoner is entitled to an evidentiary hearing on a § 2255 motion unless "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *Standing Bear v. United States*, 68 F.3d 271, 272 (8th Cir. 1995). "Accordingly, a petition can be dismissed without a hearing if (1) the movant's allegations, accepted as true, would not entitle the movant to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or are conclusions rather than statements of fact." *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

All of Petitioner's claims made in his § 2255 Motion are capable of resolution from the

record. *Id.* It is clear Petitioner's claims are all either contradicted by the record, inherently incredible, or conclusions rather than statements of fact. Accordingly, the United States opposes Petitioner's § 2255 Motion in all respects, and it urges the District Court to deny the request for an evidentiary hearing.

## IX. CONCLUSION

Petitioner's claims are subject to procedural default with the exception of the ineffective assistance of counsel claim and the jurisdictional claim. Mr. Arendt's performance was not deficient under the *Strickland* test in relation to any of the claims. In addition, Petitioner was not prejudiced at any point in that there would have been a different outcome. The sentence Petitioner received was reasonable and did not exceed the statutory maximum. The claims involving perjury and prosecutorial misconduct were contrary to the record, conclusory, and not based in fact. Petitioner was properly transferred into federal custody by the Writ of Habeas Corpus ad Prosequendum issued by the District Court. The claims of error were decided on direct appeal and cannot be relitigated in a § 2255 Motion. Finally, the Petitioner's claims can be decided by the record, and he is not entitled to an evidentiary hearing. For these reasons, the Petitioner's 28 U.S.C. § 2255 Motion must be dismissed.

Dated this 8th day of July, 2008.

MARTY J. JACKLEY
UNITED STATES ATTORNEY

22

Jeremy R. Jehangiri
Assistant United States Attorney
P.O. Box 7240
Pierre, South Dakota 57501
(605) 224-5402
Fax (605) 224-8305
jeremy.jehangiri@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned attorney for the United States of America hereby certifies that on the ____ day of July, 2008, a copy of the Government's Response and Brief in Opposition to 28 U.S.C. § 2255 Petition was electronically transmitted by the clerk's office or mailed first-class, postage prepaid, hand-delivered, or faxed by the undersigned this date to the parties listed below:

Aloysius Arendt
P.O. Box 1077
Pierre, SD 57501

Darren Youngman - 12753-073
FCC Beaumont Medium
P.O. Box 26040
Beaumont, TX 77720

MARTY J. JACKLEY
United States Attorney

Jeremy R. Jehangiri
Assistant United States Attorney

23