**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION**

| | |
|---|---|
| United States of America,            )   | |
|                                                       )   | |
|            Plaintiff,                        )   | |
|   vs.                                             )   | Case No. 3:04-cr-30110 |
|                                                       )   | |
| Darren Youngman,                    )   | **ORDER DENYING MOTION** |
|                                                       )   | |
|            Defendant.                     )   | |

Before the Court is Defendant Darren Youngman's motion pursuant to 28 U.S.C. § 2255. He alleges ineffective assistance of counsel, sentencing errors, the Court lacked jurisdiction, the use of perjured testimony, and other errors by the Court. The United States resists the motion. For the reasons explained below, the motion is denied.

**I.     BACKGROUND**

The superseding indictment in this case contained eighteen felony counts involving six victims. The charges and corresponding counts were: kidnaping (Count 1); aggravated sexual abuse (Counts 2, 3, 13, 14, 16); assault with a dangerous weapon (Counts 4, 5, 8, 11, 15, 17); assault resulting in serious bodily injury (Counts 6, 9, 10, 12, 18); and burglary (Count 7). The victims all knew the Defendant. Six counts (7, 10, 11, 12, 13, 14) were dismissed during the trial on motion by the Government. Count seven, the burglary charge, was dismissed based upon insufficient evidence. (Trial Transcript. ("TT") 625). Counts ten through fourteen were dismissed when the complaining witness refused to testify. (TT. 363). The remaining twelve counts were submitted to the jury. The verdict was not guilty on three counts (1, 2, 9) and guilty on  nine counts (3, 4, 5, 6, 8, 15, 16, 17, 18). The Court granted judgments of acquittal as to two

counts (6, 18) on a Rule 29 motion. The reason for this was the evidence was legally insufficient for a finding of "serious bodily injury." Ultimately, the Defendant was convicted of two counts (3, 16) of aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(a) & 1153, and five counts (4, 5, 8, 15, 17) of assault with a dangerous weapon in violation of 18 U.S.C. §§ 113(a)(3) & 1153. The Defendant was sentenced to 280 months imprisonment. A direct appeal was taken and the convictions were affirmed. United States v. Youngman, 481 F.3d 1015 (8th Cir. 2007). The current motion was filed April 1, 2008. The Defendant maintains that he is innocent and the witnesses against him were lying. He admits his guilt as to count seventeen. Both these positions are consistent with the Defendant's trial testimony. The matter has been fully briefed and is now ripe for consideration.

## II.   EVIDENTIARY HEARING

The Defendant has requested an evidentiary hearing. The Government is opposed. The Defendant did not give any explanation as to why an evidentiary hearing is necessary, what witnesses he would call, or what testimony he expects to elicit. The allegations are, for the most part, vague, conclusory, and supported by very little meaningful argument. A review of all the materials submitted by the parties, the entire file, the trial, verdict, and sentencing transcripts, and the presentence investigation report, leads the Court to conclude that an evidentiary hearing is unwarranted. The request is denied.

## III.  DISCUSSION

A motion made pursuant to 28 U.S.C. § 2255 requires a showing of either constitutional or jurisdictional error, or a "fundamental defect" resulting in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974); Hill v. United States, 368 U.S. 424, 428

(1962). A section 2255 motion is not a substitute for a direct appeal and is not the proper way to complain about simple trial errors. Anderson v. United States, 25 F.3d 704, 706 (8th Cir. 1994). A section 2255 movant "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).

### A.    Ineffective Assistance of Counsel

It is well-established that a defendant's ineffective assistance of counsel claim is properly raised under 28 U.S.C. § 2255 rather than on direct appeal. United States v. Davis, 452 F.3d 991, 994 (8th Cir. 2006). The burden of demonstrating ineffective assistance of counsel is on a defendant. United States v. Cronic, 466 U.S. 648, 658 (1984); United States v. White, 341 F.3d 673, 678 (8th Cir. 2003). To be eligible for habeas relief based on ineffective assistance of counsel, a defendant must meet the two-part test announced in Strickland v. Washington, 466 U.S. 668, 687 (1984).

A defendant must first establish that counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness. Id. at 687-88; see also Wiggins v. Smith, 539 U.S. 510 (2003). This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Strickland v. Washington, 466 U.S. 688, 687 (1984). In considering whether this showing has been accomplished, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. If the underlying claim (i.e., the alleged deficient performance) would have been rejected, counsel's performance is not deficient. Carter v. Hopkins, 92 F.3d 666, 671 (8th Cir. 1996). Courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time

of the alleged error. Id.  A Court need not address the issue of the reasonableness if the Defendant has failed to establish prejudice. Strickland, 466 U.S. at 696.

A defendant must also show that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).  This requires proving that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to the defendant. Id. at 690-91.  A reasonable probability is one "sufficient to undermine confidence in the outcome." Wiggins v. Smith, 539 U.S. 510, 534 (2003).  Merely showing a conceivable effect is not enough.  When evaluating the probability the result would have been different, a court views the alleged error in light of the totality of all the evidence before the jury to gauge the effect of the error. Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006).

Where a defendant raises multiple claims of ineffective assistance, each claim of ineffective assistance must be examined independently rather than collectively. Hall v. Luebbers, 296 F.3d 685, 692-93 (8th Cir. 2002); Griffin v. Delo, 33 F.3d 895, 903-04 (8th Cir. 1994).

### 1. Failure to Call Exculpatory Witnesses

The Defendant argues defense counsel failed to call numerous exculpatory witnesses. In his motion the Defendant gives the names of numerous witnesses he maintains should have been called along with short summaries of their expected testimony. See Docket Nos. 144 & 163.  The Defendant's statement is riddled with hearsay.  Attempts to locate witnesses were made but some witnesses could not be found and others were uncooperative or unhelpful. See Docket No. 156 at ¶ 2.  He claims defense counsel was ineffective in not calling these witnesses. However, the Defendant has not provided statements, affidavits, or addresses for any of these

individuals.  What testimony any of these individuals would have provided is mere speculation.

The failure to subpoena three individuals was addressed on direct appeal and the Court will not revisit the issue here. Youngman, 481 F.3d at 1017; United States v. Shabazz, 657 F.2d 189, 190 (8th Cir. 1981).  In rejecting the compulsory process argument on direct appeal the Eighth Circuit concluded the Defendant had failed to show the witnesses were material or necessary to the presentation of an adequate defense. Youngman, 481 F.3d at 1017.  Whether defense counsel was ineffective in failing to timely subpoena these three witnesses was not addressed on direct appeal.  These witness were F.M., T.W.S., and B.P. See Docket No. 80.  As with the other numerous witnesses the Defendant claims should have been called he has failed to make any meaningful showing as what testimony these three witnesses would have provided.  The burden is on the Defendant to show prejudice and he has failed to do so.  The argument fails.

        **2.**     **Failure to Properly Cross-Examine and Impeach Government Witnesses**

The Defendant argues that defense counsel failed to cross-examine and impeach the Government's witnesses.  The Defendant does not explain his argument or specify how the cross-examination failed.

The Court has reviewed the trial transcript and the specifically the cross-examination of the three victims.  The cross-examination of K.K. was lengthy and effective. (TT. 183-221, 224–25).  The jury returned not guilty verdicts as to two counts relating to K.K.  These were counts one and two which charged kidnaping and aggravated sexual abuse.  The cross-examination of K.K. also laid the foundation for the Rule 29 motion which was granted as to count seven.  A number of inconsistencies in K.K.'s testimony were raised. (TT. 192, 198, 214).  The questioning was aggressive.  No glaring failures are evident.  The same can be said with

regarding to the cross-examination of S.R. and B.L. (TT. 343-51, 383-88).

Cross-examination is far more art than science. Trial strategies vary and the Court is mindful of injecting hindsight into its analysis. By any measure the cross-examination conducted by defense counsel was reasonable and falls squarely within a range of acceptable professional norms.

### 3. Failure to Investigate, Prepare for Trial, Produce Defense Evidence, and Failure to Present an Adequate Defense

The Defendant argues defense counsel failed to investigate the case, prepare for trial, produce defense evidence, and present and adequate defense. The arguments are vague and conclusory. Such arguments cannot for the basis for relief under section 2255. See Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998). What the record reveals is that defense counsel did investigate the case. A former FBI agent was hired to find and interview potential defense witnesses. See Docket No. 156 at ¶ 4. Defense counsel himself spent considerable time investigating the case and searching for witnesses but many of the witnesses either contradicted the Defendant's version of events or could not be found. See Docket No. 156 at ¶ 2. The testimony of K.K. and B.L. was most compelling and would have been very difficult to overcome. The record does not support the allegation of failure to investigate.

The Defense presented testimony from six witnesses besides the Defendant himself. The Court's impression of defense counsel was that he was prepared for trial, presented all the defense evidence which was reasonably available to him, and mounted a competent and adequate defense. The Government witnesses were tested by cross-examination. Acquittals were obtained on three counts. The Defendant has failed to substantiate his allegations which are largely contradicted by the record. The argument fails.

### 4. Failure to Challenge Prosecutorial Evidence

The Defendant alleges defense counsel failed to challenge the Government's evidence. The Defendant fails to support his argument with specifics. As the Court explained above, the cross-examination of the three complaining witnesses was adequate. A review of the trial transcript shows that defense counsel cross-examined all of the Government witnesses save for one and that witness provided very little testimony. The Court's recollection is that defense counsel provided a very spirited challenge to the prosecution's case. This unsupport allegation fails.

### 5. Failure to Argue Actual Innocence

The Defendant lists failure to argue actual innocence in his petition as one of the ways defense counsel was ineffective. He fails to support the statement with any argument. Defense counsel did ask the jury to return not guilty verdicts, except for count seventeen to which the Defendant admitted guilt, during closing arguments. (TT. 694). The jury found the Defendant not guilty on counts one, two, and nine. The argument fails.

### 6. Conflict of Interest

The Defendant makes three charges of conflict of interest. They are all meritless.

The first is that defense counsel represented a grandmother seeking visitation rights with her grandson. The defendant in that case, the mother of the child, was the Defendant's cousin, S.W. The representation occurred in 2004 and 2005 and was apparently concluded prior to defense counsel's appointment to represent the Defendant in this case in October 2005. See Medearis v. Whiting, 695 N.W.2d 226 (S.D. 2005). Defense counsel never represented S.W. and S.W. did not testify at the Defendant's trial. The Court does not see a conflict of interest as the

two cases were completely unrelated. The Defendant does not explain, and the Court cannot fathom, how this representation was prejudicial to him.

The second charge is that defense counsel and the prosecutor were good friends. Defense counsel states in his affidavit that his only interaction with the prosecutor was in a professional context. See Docket No. 156 at ¶ 3.

The third charge is that defense counsel was suspended in the past for corruption. The allegation is completely unsubstantiated. Even if true, the charge is meritless as there is no evidence defense counsel was not properly licensed at the time he represented the Defendant. See Docket No. 156 at ¶ 1.

The claims of conflict of interest fail.

### 7.   Failure to Object to Prosecutorial Misconduct

The Defendant argues the prosecutor engaged in prosecutorial misconduct during the trial and defense counsel failed to object. This is an apparent reference to the prosecutor's attempts to force T.B., the alleged victim in counts ten through fourteen, to testify. See (TT. 311-15, 358-364). He also references a letter purportedly from T.B. it which she complains about being pressured to testify by the prosecutor. See Docket No. 148, part 9.[1] T.B. provided very little testimony before she was excused. (TT. 311-15). The discussions over how T.B. might be persuaded to testify were conducted outside the jury's presence. (TT. 359). When it became clear T.B. simply would not testify the Government moved to dismiss all counts relating to her and these counts were then dismissed. (TT. 363). The jury was instructed as to the dismissed counts to "put them out of your mind and they are no longer a part of the case and as far as we

---

[1] The letter has never been authenticated. It is signed only with a first name. It is dated March 28, 2006. The trial was concluded on February 3, 2006.

are concerned now with our testimony and your consideration, it's as if they never were a part of the case." (TT. 364).  The Defendant fails to explain what objection his counsel should have made or how this sequence of events prejudiced him.  The Court sees no prejudice.  The argument fails.

### 8.    Sentencing

The Defendant makes three arguments with regard to sentencing.

The first argument is that defense counsel was ineffective for failing to argue against unconstitutional sentence enhancements.  The defendant does not specify what sentencing enhancements were unconstitutional.  No objections to the presentence investigation report were made by the defense.  The Court has reviewed the presentence investigation report and sees no errors.

The second argument is that defense counsel failed to object to errors in the presentence investigation report.  Again, the Defendant fails to specify the errors and thus analysis is impossible.

The third argument is that the Court failed to consider the factors outlined in 18 U.S.C. § 3553(a) and defense counsel failed to object to this error.  The Court was well aware of the section 3553 factors at the time of sentencing.  The factors were outlined in the presentence investigation report as well. See Presentence Investigation Report at. ¶ 142.

The Defendant also states that defense counsel should have moved for a downward departure.  The Defendant does not articulate what the grounds might have been for such a motion.  Had such a motion been made it would have been denied.  The Government sought an upward departure based upon uncharged conduct and an additional enhancement for obstruction

of justice. These requests, which defense counsel opposed, were denied.

The Defendant did not receive ineffective assistance of counsel during the sentencing phase.

### 9.     Failure to Communicate With Petitioner

The Defendant argues defense counsel failed to adequately communicate with him. Aside from a one sentence statement that counsel failed to discuss the presentence investigation report with him the Defendant offers nothing to support his argument. The Defendant's own submission shows numerous letters written by defense counsel to the Defendant. See Docket No. 148. The affidavit submitted by defense counsel contradicts the Defendants argument. See Docket No. 156 at ¶¶ 9-10. A letter dated April 5, 2006, from defense counsel to the Defendant specifically refers to discussions relating to the presentence investigation report. See Docket No. 148-8 at p. 5. The argument is unsupported by any facts. No attempt to show prejudice has been made. The argument fails.

### 10.    Failure to Object and/or request Jury Instructions and Failure to Poll the Jury

The Defendant argues that defense counsel failed to request or object to specific jury instructions. He also argues defense counsel failed to poll the jury.

The Defendant fails to specify what jury instruction defense counsel should have requested or to which of the Court's instructions he should have objected. Counsel did request a number of instructions prior to trial and most were given, at least in substance. On direct appeal the defense raised the issue of the Court's "on or about" instruction. Youngman, 481 F.3d at 1019. Since that issue has already been decided it cannot be relitigated here. Shabazz, 657 F.2d at 190. The Defendant has failed to state a claim with regard to the jury instructions.

Defense counsel requested that the jury be polled after the verdict was read. The request was granted, the jury was polled, and the verdict was unanimous. (Jury Verdict Transcript ("JVT") 8-10).

### B.     Ineffective Assistance of Appellate Counsel

In order to establish ineffective assistance of appellate counsel it must be shown that counsel's performance was both deficient and prejudicial. United States v. Brown, 528 F.3d 1030, 1032 (8th Cir. 2008). Failure to raise a claim is presumed to be sound strategy absent contrary evidence. Id. It must be shown that the outcome of the appeal would have been different in order to demonstrate prejudice. Id.

Defense counsel in this case was court-appointed. The Defendant was initially represented by the Federal Public Defenders Officer (FPD). That relationship broke down after a failed plea agreement and the FPD moved to withdraw. CJA counsel was then appointed. CJA counsel moved to withdraw prior to trial. The motion was reluctantly denied. Trial counsel and appellate counsel were the same.

The Defendant's argument is difficult to follow. He seems to argue that he received ineffective assistance on appeal because trial counsel and appellate counsel were the same person and this limited the issues that could be raised. He specifically mentions an issue raised on direct appeal relating to the subpoena of defense witnesses. Youngman, 481 F.3d 1015, 1017. The Defendant argues that his appellate counsel should have raised claims of ineffective assistance relating to this subpoena issue but did not because appellate counsel is not required to raise his own ineffectiveness.

Ineffective assistance claims are generally not raised on direct appeal. United States v.

Davis, 406 F.3d 505, 510 (8th Cir. 2005). Such claims are best evaluated in a motion for post-conviction relief on a fully developed record. Id. Ineffective assistance claims will only be addressed on direct appeal in exceptional cases where: "(1) the district court has developed the record on the ineffectiveness issue, or (2) the result would otherwise be a plain miscarriage of justice." United States v. Martin, 274 F.3d 1208, 1210 (8th Cir. 2001). Neither circumstance was apparent in this case. Given this framework, counsel cannot be faulted for failing to raise ineffective assistance on direct appeal.

The issue of trial counsel's effectiveness with regard to the obtaining the necessary witnesses for trial has been raised in this motion. The same test has been applied. As the argument has been rejected no prejudice has been shown.

The Defendant has not argued appellate counsel failed to raise any other claim on direct appeal. And despite the Defendant's assertion of error, it is not at all uncommon and certainly not improper for trial counsel and appellate counsel to be the same person. The Defendant did not request different counsel for his appeal. The indigent's right to counsel does not encompass a right to the counsel of his choice. United States v. Espino, 317 F.3d 788, 798-99 (8th Cir. 2003).

The Defendant has failed to show ineffective assistance of appellate counsel.

    **C.**    **The Sentence**

The Defendant argues his sentence was unreasonable, above the statutory maximum, and violated the Sixth Amendment.

The Defendant was convicted of two counts of aggravated sexual abuse in violation of 18 U.S.C. § 2241(a), and five counts of assault with a dangerous weapon in violation of 18 U.S.C. § 113(a)(3). The maximum penalty for violation of 18 U.S.C. § 2241(a) is life imprisonment. The

maximum penalty for violation of 18 U.S.C. § 113(a)(3) is ten years imprisonment.

The Defendant was sentenced to 280 months imprisonment on each of the aggravated sexual abuse convictions and 120 months imprisonment on each of the assault with a dangerous weapon convictions. All the sentences were concurrent. The sentences did not exceed the statutory maximum.

The applicable Guideline range was established as 235 to 293 months. This was based upon the finding of a combined adjusted offense level of 35 and a criminal history category IV. The Court has reviewed the calculation anew and sees no error. The Defendant fails to explain exactly why this sentence was unreasonable. The Court did not upward depart. Nor was the 280 month sentence even at the top of the Guideline range, although it was near the top. The rapes the Defendant committed were brutal and the beatings he administered to his victims were vicious. The Defendant has a long criminal history which includes a pattern of abusive and assaultive behavior toward women and drug use. He had 36 arrests by tribal authorities between 1985 and 2004 for which he received no criminal history points. The Defendant's life of crime demonstrated he posed a very real threat to public safety. The Court fails to see how the sentence could be described as unreasonable.

The Defendant makes reference to a Sixth Amendment violation and cites United States v. Booker, 543 U.S. 220 (2005). In Booker the Supreme Court held the mandatory nature of the Guidelines violated the Sixth Amendment. Id. at 246-48. Booker's remedy was to sever and excise two provisions which made the Guidelines mandatory and thus render them advisory. Id. at 259-60. Booker was decided January 12, 2005. The Defendant was sentenced on May 10, 2006. The Court was well aware of Booker and the advisory nature of the Guidelines at the time

13

it sentenced the Defendant. (Sentencing Transcript ("ST") 4).  The Sixth Amendment argument fails.

### D.  Jurisdiction

The Defendant, an American Indian, argues the Court lacked jurisdiction because he was arrested by tribal authorities and not properly transferred to federal custody.  He claims a violation of the Fourth Amendment and "misc. treaties."  He also seems to imply that federal law does not apply on the Rosebud Indian Reservation.

The Defendant was indicted on November 17, 2004.  A the time, the Defendant was being held in the Rosebud Tribal Jail after being arrested by tribal authorities for assaulting K.K.  The docket sheet reflects that a federal arrest warrant for the Defendant was issued on November 23, 2004.  A Writ of Habeas Corpus ad Prosequendum was issued by the Court on November 24, 2004, directing tribal authorities and the U.S. Marshals Service to deliver the Defendant before the United States District Court in Pierre, South Dakota, for purposes of an initial appearance.  An initial appearance was held on November 30, 2004, and the Defendant was detained pending trial.  The Court sees nothing irregular in the procedures that were followed.

The Defendant was charged with kidnaping, assault with a dangerous weapon, aggravated sexual abuse, assault resulting in serious bodily injury, and burglary.  The Major Crimes Act confers jurisdiction over Indians who commit these crimes within Indian country to the federal courts. 18 U.S.C. § 1153.  The indictment alleged the Defendant was an Indian and the offenses had occurred in Indian Country.  The evidence regarding these jurisdictional elements went largely unconstested.  The jurisdictional arguments fail.

### E.     Perjury

The Defendant argues that K.K. "and others" committed perjury when they testified against the Defendant. He also suggests the prosecutor and defense counsel knew the testimony was untrue.

In order for a judgment to be vacated and a new trial ordered based on allegations of perjury a defendant must establish the challenged testimony was in fact perjured. English v. United States, 998 F.2d 609, 611 (8th Cir. 1993). The defendant must also prove the prosecutor knew, or should have known, of the perjury at the time the testimony given. Id.

The Defendant offers little to support his allegations. The Defendant did submit an affidavit, which is not in proper form, wherein he makes the following allegations:

> "One of the witnesses was [W.J.] who could have testified that petitioner had a broken foot during the time of the alleged offense."
>
> "That [L.R.] had told petitioner that his (ex)wife [S.R.] told him she would testify falsely to have a 6-yr probation term expunged, whereby the Government had submitted statements to her to memorize."
>
> "That [F.M.] could have testified about the situations involving [K.K.], showing that K.K.'s statements were perjured."

The Defendant has not submitted affidavits from any of these individuals to support his allegations. W.J. could not be found prior to trial and did not testify. The Defendant himself testified as to his foot being broken. (TT. 525). S.R. did testify and was subject to cross-examination. (TT. 327-52). Her criminal history was revealed. (TT. 343-44). Any deal that was made with the Government for her testimony was not addressed. The Defendant was convicted of assaulting S.R. with a dangerous weapon. F.M. did not testify. Aside from the Defendant's "affidavit," the allegations regarding these three individuals are unsubstantiated.

15

The Defendant also argues that K. K.'s testimony regarding the color of the shoes he was wearing when he kicked her constitutes perjury. The Defendant testified at trial and the jury, as evidenced by the verdict, largely discounted his version of events. That the jury reached not guilty verdicts on two counts relating to K. K. does not require a conclusion that she committed perjury as it is the jury that makes credibility determinations and resolves conflicting testimony. United States v. Coleman, 525 F.3d 665, 666 (8th Cir. 2008). K.K. testified the Defendant was wearing white shoes when he kicked her. The Government introduced a pair of black shoes that belonged to the Defendant. The jury was made aware of the distinction through cross-examination by defense counsel. Such a minor detail does not prove perjury. The issue was whether the Defendant assaulted K.K. by kicking her with shod feet and not what color shoes he was wearing. The jury believed K.K.

The Defendant has also submitted a nineteen page "Reply to affidavit of Aloysius Arendt." See Docket No. 163. The document contains the names of numerous individuals who the Defendant claims could have provided helpful testimony. In some cases the Defendant summarizes what information the individual would have provided and how it might have helped him. In other cases the Defendant asserts the testimony would have shown one or more of the victims committed perjury. What is lacking is any supporting letters or affidavits from any of the individuals. The entire document is unsubstantiated. There is one note attached that purports to be from the Defendant's daughter but it relates only to the use of defense counsel's telephone.

The Court's impression of the document is that it is filled with rumor and innuendo. The document is riddled with double hearsay and frequently devolves into the fanciful. The Defendant makes the incredible statement that his cousin, A.J., could have testified as to his

character for being sober and not using drugs. Docket No. 163 at p.3. The presentence investigation report details an extensive criminal history dating back to 1987 including multiple drug and DUI convictions, and 36 arrests on tribal charges between 1985 and 2004. The Defendant himself testified as to his drug use at trial. (TT. 576). The Defendant also states defense counsel was absent from crucial portions of the trial. Docket No. 163 at p. 11. This statement is absolutely false.

The Defendant has submitted nothing to the Court to substantiate his allegations. The perjury arguments fail.

### F.     Statements by the Court

The Defendant argues that the Court's denial of his motion for continuance and remarks made by the Court at trial regarding one witness deprived him of his right to a fair trial. The right to a fair trial is grounded in the Fifth Amendment right to due process and the Sixth Amendment right counsel. See Lefkowitz v. United States, 446 F.3d 788, 790 (8th Cir. 2006). The Defendant relies on the cumulative effect of these alleged errors to support his argument.

The remarks which the Defendant references were related to a complaining witness's reluctance to testify. All the charges relating to that witness were dismissed before the case was submitted to the jury. This issue was raised on direct appeal and found not to have prejudiced any of the Defendant's substantial rights. Youngman, 481 F.3d at 1018-19. Claims raised and decided on direct appeal cannot be relitigated in a § 2255 motion. United States v. Shabazz, 657 F.2d 189, 190 (8th Cir. 1981).

The Defendant also argues a continuance was necessary in order to obtain the presence of three defense witnesses. The closely related subpoena issue was rejected on direct appeal.

17

Youngman, 481 F.3d at 1017.  A motion for continuance was filed January 17, 2006.  Trial was scheduled to begin on January 30, 2006.  The motion was filed in conjunction with CJA defense counsel's motion to withdraw.  The motion to withdraw was based upon the Defendant's refusal to cooperate.  The motion noted the Defendant's refusal to consent to another continuance.

The motion to withdraw and motion for continuance cited difficulties preparing for trial due to a most uncooperative client.  To say that the Defendant was a difficult client for his attorneys to deal with would be an understatement.  The motion to withdraw detailed the Defendant's refusal to provide the names and addresses of witnesses, refusal to sign necessary releases, hanging up on counsel during telephone calls, and a very uncooperative attitude toward a defense investigator.  The Court, while sympathetic to counsel's difficulties, denied both motions on January 18, 2006.  The order read as follows:

> This matter is set for trial on January 30, 2006.  It has previously been set for trial.  A plea agreement was reached.  The defendant, after the trial was cancelled, then refused to enter the pleas called for in the agreement.  Initial counsel then moved to withdraw, indicating an inability to work with Mr. Youngman.  Another continuance was granted, and new counsel appointed.  Mr. Youngman has now completed more than a year in county jails.  With the trial some 12 days away, new counsel (Al Arendt) has indicated that Mr. Youngman is totally uncooperative and in effect refuses to assist counsel in preparing a defense to the multiple felony counts.
>
> Mr. Arendt now moves to withdraw and for a continuance to allow replacement counsel an opportunity to prepare for trial.
>
> The Court sees no hope for a further replacement counsel being treated any better by Mr. Youngman, and is of the opinion that the trial should be held as scheduled.  The motion for continuance is denied.  Mr. Arendt's motion to withdraw is also denied, with the Court appreciating the sacrifice he is making in working with Mr. Youngman.
>
> Mr. Youngman has the right to participate or not, and his election to not assist counsel may well produce a less than salubrious result.  So be it.

It must also be remembered that the Defendant was indicted on November 17, 2004, and a superseding indictment was returned on May 19, 2005. The Federal Public Defender had been allowed to withdraw on October 20, 2005, following the failed plea agreement.[2] CJA counsel was appointed on October 20, 2005. Three continuances had previously been granted in orders dated January 21, 2005, June 7, 2005, and October 4, 2005. The multiple continuances coupled with the failure to follow through with the plea agreement and the lack of cooperation exhibited in working with counsel made it seem that the Defendant had adopted an independent strategy of delay.

As the Court predicted, the result of the trial was less than salubrious for the Defendant. If the Defendant was in any way prejudiced by the Court's refusal to grant a continuance on the eve of trial he has only himself to blame. The Defendant had more than adequate time to provide his attorneys with the names of the witnesses who might have been helpful to his cause. Beyond his own conclusory statement that these witnesses would have provided helpful testimony, there is nothing in the record to show what that testimony might have been. The Defendant has shown no error in either instance. The argument fails.

## IV.   CONCLUSION

The motion is baseless. The Defendant blames counsel for his convictions rather than accept responsibility for his actions. Defense counsel did the best he could with a difficult set of facts and a very difficult client. The testimony of K.K. and B.L. was compelling while that of

---

[2]The plea agreement called for a ten-year sentence

the Defendant was less so.[3] The prosecutor was aggressive and perhaps rightly so as he sought to remove a violent man from a small community. The indictment reflected this. T.B. was so fearful of the Defendant she could not testify. The jury returned a logical verdict, although the Court concluded that the verdict could not be sustained on counts six and nine given the nature of the injuries. The Defendant received effective assistance from his court-appointed counsel. The trial was fair. The result just.

Based upon the entire file and upon the foregoing discussion, it is **HEREBY ORDERED** that:

1. Youngman's Section 2255 Motion is **DENIED**.

2. The Court certifies that an appeal from the denial of this motion may not be taken in forma pauperis because such a appeal would be frivolous and cannot be taken in good faith. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

3. Upon the entire record before the Court, dismissal of the motion is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings. Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983). Therefore, a certificate of appealability will not be issued by this Court.

4. If the Defendant desires further review of his motion he may request issuance of a certificate of appealability by a circuit judge of the Court of Appeals for the Eighth Circuit in accordance with Tiedeman v. Benson, 122 F.3d 518, 520-22 (8th Cir. 1997).

**IT IS SO ORDERED.**

Dated this 10th day of December, 2008.

/s/ *Patrick A. Conmy*
Patrick A. Conmy, Senior District Judge
United States District Court

---

[3] The case is best summed up by the testimony of K.K when the she was asked by the prosecutor why she had sex with the Defendant. "Because I was scared of him, and I was scared for my life. You should have seen his eyes, the way he was, high on glass, and mean; no way out, no where to go; no one to hide with." (TT. 221).