UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DARREN YOUNGMAN,<br><br>Defendant. | 3:04-CR-30110-RAL<br><br>**OPINION AND ORDER ON MOTION<br>FOR COMPASSIONATE RELEASE** |

A federal grand jury returned a superseding indictment charging Darren Youngman (Youngman) on one count of kidnapping in violation of 18 U.S.C. §§ 1153 and 1201(a)(2); five counts of aggravated sexual abuse in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2); eight counts of assault with a dangerous weapon in violation of 18 U.S.C. §§ 1153 and 113(a)(3); three counts of assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 115 and 113(a)(6); and one count of first degree burglary in violation of 18 U.S.C. § 1153 and SDCL § 22-32-1. Doc. 21. The Honorable Patrick A. Conmy conducted a jury trial in February of 2006. Doc. 104. During the trial, the United States moved to dismiss the burglary count, two counts of aggravated sexual abuse, and three counts of assault with a dangerous weapon. Id. at 4. The remaining twelve counts were submitted to the jury. Id. at 9. The jury found Youngman guilty on two counts of aggravated sexual abuse, five counts of assault with a dangerous weapon, and two counts of assault resulting in serious bodily injury and not guilty on the kidnapping count, one count of aggravated sexual abuse, and one count of assault resulting in serious bodily injury. Docs. 103; 104 at 9. After the verdict was received, the Court dismissed the two counts of assault resulting in serious bodily injury. Docs. 110, 112. On May 10, 2006, the Honorable Patrick A. Comny held a

1

sentencing hearing in Youngman's case and imposed a custody sentence of 280 months on each count of aggravated sexual abuse and 120 months on each count of assault with a dangerous weapon, to be served concurrently, and five years of supervised release on the aggravated sexual abuse counts and three years of supervised release on the assault with a dangerous weapon counts, to be served concurrently. Docs. 117-2; 119 at 2–3.

Youngman is currently incarcerated at Greenville Federal Correctional Institution (Greenville FCI) and has filed a pro se motion for compassionate release, citing his health conditions in combination with the global COVID-19 pandemic as justification. Doc. 186. The Government has responded in opposition. Doc. 192. This Court has considered Youngman's motion, and for the reasons stated herein, denies his motion at this time.

## I.  Background

Youngman's conviction resulted from several physical and sexual assaults he perpetrated on his significant others. PSR at ¶¶ 8–16. The facts relating to the crimes are disturbing, and they had severe, lasting effects on the victims. Id. at ¶ 17; Docket 188.

Between January 1, 2001, and May 31, 2003, Youngman was in a relationship with Brenna LaPointe (LaPointe). PSR at ¶ 13. Youngman was physically abusive to LaPointe during their relationship. Id. One day, LaPointe and Youngman were at a residence when Youngman accused LaPointe of being involved with another male there. Id. Youngman pulled her hair, threatened her with a baseball bat, and beat her on the legs with a belt. Id. He struck her five or six times with the belt. Id.

Youngman also sexually assaulted LaPointe. Id. at ¶ 15. On one occasion, Youngman struck LaPointe on her chest and legs, grabbed her by her hair, and struck her head against the wall. Id. He also struck her with his heel. Id. Then, he told her to come over to him and have

sex with him. Id. LaPointe did not want to engage in sexual intercourse with Youngman, but she was too afraid to say no to him. Id. Youngman had vaginal intercourse with LaPointe, and she had no doubt that Youngman knew she did not want to have sex with him. Id.

Between January 1, 2003, and January 31, 2003, Youngman was angry with LaPointe, and he began to chase her around a table. Id. at ¶ 16. Then, he pushed her down, pulled her around the house by her hair, and grabbed a wooden flute and hit her with it. Id. LaPointe put her arm up to block the blow, and the flute broke over her arm. Id.

Between May 1, 2004, and September 30, 2004, Youngman was in a brief relationship with Sarah Reynolds (Reynolds). Id. at ¶ 12. In July of 2004, Youngman got upset with Reynolds and punched her in her side and on her leg. Id. Then, he hit Reynolds with a belt across her legs and feet. Id.

For approximately five years, Youngman was in an on-and-off romantic relationship with Kathleen King (King). Id. at ¶ 8. During their relationship, Youngman would verbally abuse and threaten King. Id. at ¶ 9. On October 19, 2004, Youngman hit King with a belt on her lower back and buttocks area. Id. at ¶ 10. As she ran away from him, Youngman kicked King in her tailbone with shod feet. Id. Then, he took all of King's clothes, besides the shirt she was wearing, to prevent her from fleeing the house. Id. During the time King was unable to leave the house, Youngman forced King to engage in repeated sexual acts. Id. Youngman inserted objects into King's vagina, forced her to perform oral and anal sex, and repeatedly had vaginal intercourse with her. Id.

Under the sentencing guidelines, Youngman's total offense level for these offenses was 35 and Youngman was in criminal history category IV. Id. at ¶¶ 73, 94. This meant that Youngman's advisory guideline range was 235 months to 293 months custody. Id. at ¶ 128. The Honorable

Patrick A. Conmy held a sentencing hearing in Youngman's case on May 10, 2006. Doc. 117-2. After hearing argument from both parties as to the appropriate sentence and hearing from Youngman himself, the Court sentenced Youngman to 280 months custody on the aggravated sexual abuse counts and 120 months on the assault with a dangerous weapon counts, all to be served concurrently, followed by a five-year term of supervised release on the aggravated sexual abuse counts and a three-year term of supervised release on the assault with a dangerous weapon counts, all to be served concurrently. Id.; Doc. 119 at 2–3. Youngman has been in custody since November 30, 2004, and is currently incarcerated at Greenville FCI. Docs. 7, 9; see also Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Sept. 28, 2020).

In early 2020, a novel coronavirus, COVID-19, quickly spread across the United States and infiltrated correctional institutions. As a new virus, COVID-19 has presented somewhat of a mystery to medical professionals and society in general. Some people can contract the virus and be completely asymptomatic, while other people develop complications and die from the illness. The Centers for Disease Control and Prevention (CDC) have identified certain underlying health conditions that put individuals at higher risk for a severe form of the illness if they contract the disease. Among those at higher risk are individuals with cancer, chronic kidney disease, obesity, serious heart conditions, sickle cell disease, and Type 2 diabetes. See People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Sept. 25, 2020).

Youngman currently suffers from the following medical conditions: chronic kidney disease (stage 1) and hyperglycemia. Doc. 190 at 2, 51. He has now filed a motion for compassionate

release with this Court based on those conditions and the increased susceptibility to complications

to COVID-19 he faces if he contracts the disease.  Doc. 186.

## II.    Legal Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed,"

except in a few, narrow circumstances.  18 U.S.C. § 3582(c).  The compassionate release statute

as amended by the First Step Act of 2018 provides one of those narrow avenues through which a

sentence may be modified.  The compassionate release statute provides in pertinent part that:

> (A) the court, upon motion of the Director of the Bureau of Prisons,
> or upon motion of the defendant after the defendant has fully
> exhausted all administrative rights to appeal a failure of the
> Bureau of Prisons to bring a motion on the defendant's behalf or
> the lapse of 30 days from the receipt of such a request by the
> warden of the defendant's facility, whichever is earlier, may
> reduce the term of imprisonment … after considering the factors
> set forth in section 3553(a) to the extent that they are applicable,
> if it finds that—
>
> (i)      extraordinary and compelling reasons warrant such a
> reduction; …
>
> and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).  "The district court has broad discretion in determining whether

proffered circumstances warrant a reduction in sentence."  United States v. Loggins, 966 F.3d 891,

(8th Cir. 2020).  Ultimately, the defendant bears the burden of establishing that a sentence

reduction is warranted. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

## III.    Discussion

The United States claims that Youngman did not file a request for compassionate release

with the warden of his correctional facility.  Doc. 192 at 3.  There is no evidence in the record

showing that Youngman submitted such a request.  See Doc. 190.  But the Court concludes that it

5

does not need to opine on whether Youngman exhausted his administrative remedies because even if the administrative exhaustion requirements have been met and Youngman's request may be considered, Youngman is still not eligible for compassionate release under the "extraordinary and compelling reasons" provision.

In determining whether compassionate release is justified, this Court must consider the sentencing factors in 18 U.S.C. § 3553(a), determine whether "extraordinary and compelling reasons" warrant a sentence reduction, and evaluate whether a sentence reduction is consistent with the Sentencing Commission's applicable policy statements. See 18 U.S.C. § 3582(c); United States v. Moore, 963 F.3d 725, 727 (8th Cir. 2020). The sentencing factors found in 18 U.S.C. § 3553(a) instruct this Court to consider the applicable guidelines issued by the Sentencing Commission; "the nature and circumstances of the offense and the history and characteristics of the defendant;" the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" to adequately deter criminal conduct, to protect the public; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). This Court also should consider the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6).

In conducting its analysis on compassionate release motions, this Court begins by considering the applicable § 3553(a) sentencing factors. The nature and circumstances of the offenses are detailed above and are disturbing. Those facts, along with Youngman's criminal history points, resulted in a 235-293 month guideline range under the sentencing guidelines. A guideline range sentence like the one imposed was necessary for several reasons. First, a lengthy sentence adequately reflected the seriousness of the offenses and provided just punishment.

Second, the type of criminal conduct at issue here requires a powerful deterrent, and the 280-month sentence was designed to protect the public. Overall, the 280-month sentence was sufficient to achieve the § 3553(a) sentencing factors, but it was not greater than necessary.

Youngman has now served approximately 70% of his full sentence and approximately 80% of his "statutory term." See Doc. 190 at 1101. Since he entered BOP custody, Youngman, now age 53, has completed many education courses. Id. at 1096–97. He has had seven discipline reports over the past fourteen years. Id. at 1093–95.

This Court next determines whether "extraordinary and compelling" reasons exist to modify a sentence. Congress has directed the Sentencing Commission to describe and provide examples of what constitutes "extraordinary and compelling" reasons with respect to the compassionate release statute. 28 U.S.C. 994(t). The Sentencing Commission provided such examples in the commentary to United States Sentencing Guideline 1B1.13. Those reasons include the defendant's terminal illness or debilitating physical or mental condition, the defendant's age in combination with the proportion of his sentence served, and certain family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Sentencing Commission also included a "catch all" provision which allows one to find "extraordinary and compelling" reasons other than those specifically listed "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1(D). However, since the First Step Act was passed, the Sentencing Commission has not updated its policy statement because it has not had a quorum. As a result, district courts have questioned whether the policy statement still applies and whether courts may consider other "extraordinary and compelling" reasons under the "catch all" provision. See United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (discussing the discord among district courts); United States v. Spears, No. 98-0208-SI-22, 2019 WL 5190877,

at *3 (D. Or. Oct. 15, 2019) (same); United States v. Brown, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019) (same). Many district courts have determined that the discretion given to the Director of the BOP by the Sentencing Commission extends to federal judges and allows them to consider "extraordinary and compelling reason[s] other than" those specifically described. United States v. Condon, No. 3:12-cr-00091-10, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (listing cases that found federal judges may apply the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D)).

Youngman argues that he qualifies for release because he has "poor health conditions" and COVID-19 is a "deadly virus." Because Youngman does not specify which provision of U.S.S.G. § 1B1.13 his motion falls within, this Court will analyze it under the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D) and the medical condition provision of comment note 1(A)(ii). Comment note 1(A) provides in relevant part that "extraordinary and compelling" reasons may exist if the defendant is "suffering from a serious physical or medical condition… that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). However, Youngman does not claim that he has a serious physical or medical condition that makes him unable to provide self-care in his correctional facility. Therefore, Youngman cannot establish "extraordinary and compelling" reasons to justify a sentence reduction under comment note 1(A)(ii).

This Court next considers Youngman's circumstances under the "catch all provision." Youngman argues that his underlying health conditions combined with the increased risks he faces if he contracts COVID-19 establish an "extraordinary and compelling" reason other than those specifically identified to justify a sentence reduction. The COVID-19 pandemic has impacted this

8

country and its economy in extraordinary ways. However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." <u>United States v. Raia</u>, 954 F.3d 594, 597 (3d Cir. 2020).

Greenville FCI currently has two active inmate infections of COVID-19 and eight active COVID-19 cases among the facility's staff; seventy-four inmates and eighteen staff have recovered from the illness, and the facility has reported no deaths. <u>See</u> COVID-19, Coronavirus, Federal Bureau of Prisons https://www.bop.gov/coronavirus/ (last visited Sept. 28, 2020). The question becomes whether Youngman's medical conditions—chronic kidney disease (stage 1) and hyperglycemia—combined with the conditions of confinement during the COVID-19 pandemic justify compassionate release.

It is true that the CDC has recognized that individuals suffering from chronic kidney disease and diabetes have an increased risk of developing a severe illness if they contract COVID-19, but the extent of those risks is yet unknown, particularly if Youngman's conditions are well-controlled. Youngman is not on dialysis for his chronic kidney disease, and his condition has improved from stage 2 to stage 1. <u>See</u> Doc. 190 at 138–39. Additionally, based on the medical records, Youngman's chronic kidney disease and hyperglycemia appear to be stable, managed, and well-controlled with medication, diet, and chronic care visits. <u>Id.</u> at 52, 58, 63, 137–39. Because COVID-19 is a new disease and so much is still unknown about how it affects individuals, this Court cannot say to what extent Youngman's life is threatened by the existence of COVID-19 in Greenville FCI, especially considering the precautions put in place by the BOP to protect him

9

and his fellow inmates.  See BOP Implementing Modified Operations, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sept. 28, 2020).

Youngman has served over half of his 280-month sentence for sexually and physically assaulting his girlfriends.  Youngman appears, to his credit, to have worked on improving himself in custody.  But the original sentence was chosen with care, considering Youngman's and his community's needs and all of the other applicable sentencing factors.  Despite the risks posed by COVID-19, this Court does not find "extraordinary and compelling reasons" to justify a sentence modification because such a reduction would not be sufficient to achieve the goals of sentencing.

IV.    **Conclusion and Order**

Therefore, it is hereby

ORDERED that Youngman's motion for compassionate release, Doc. 186, is denied.

DATED this __1st__ day of October, 2020.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE

10